I'm Stephanie Simpson representing Mr. Massachi. This involves a Social Security case where there were two administrative hearings and two appeals to district court. After the first administrative hearing where the judge issued an unfavorable decision, it was appealed to the Central District here in California and remanded with the understanding that the ALJ shall evaluate the RFC, the residual functional capacity, based on accurate and complete summary and recitation of the diagnostic findings of Dr. Pushen and Dr. Parrick. They were both consultative psychiatrists. And the ALJ shall reassess the claimant's mental residual functional capacity, obtain additional VE testimony in light of the RFC, a finding that is consistent with the requirements of Social Security Ruling 00-4B, and take all steps necessary to complete the record. At the second administrative hearing, only the vocational expert testified. The attorney, that was Attorney Leidner at that time, he asked the VE to supplement the ALJ's hypothetical by putting in the evidence regarding that deficiencies of concentration and persistence in PACE resulting in failure to complete tasks in a timely manner was often. He explained to the vocational expert that the word often in the regulations means either one-third of the day or two-thirds of the day. With that added evidence, the vocational expert testified there were no jobs the claimant could do. And that ended that decision. So the ALJ then issued a new decision. What he did is he disregarded part of Dr. Parrick's findings in an attempt to uphold, I imagine, his prior decision. And so therefore, he found against the claimant. What this involves is really mental impairment where there has been major depression diagnosed. And also there has been a bleeding ulcer. When the claimant testified at the first hearing, Judge Wheeler, and told Judge Wheeler that he had a bleeding ulcer, Judge Wheeler then stated, that will lead to peritonitis and you will be dead in a day. He said, why aren't you dead now? Now, that is not the type of question that an adjudicator should ask. Then the claimant testified about his inability to walk distances and his legs hurt him. Judge Wheeler turned around and stated, well, why didn't you come in with a crutch or a cane? Now, Judge Wheeler has been ordered by Region IX General Counsel to have a mentor at all hearings. He did not have a mentor at that hearing, which he is supposed to have. So therefore, the — there is an affidavit from the claimant in the eye-opening brief stating that the judge cut him off whenever he tried to answer anything and the way he yelled all the time made him sick when he left. So it would appear that the hearing, the first hearing, was not the type of a hearing that one should have. Following the second administrative hearing, the case was again appealed to district court by another attorney. I'm the attorney. Commissioner's finding is the final decision. So the claimant appealed to the Ninth Circuit and in pro per. And then he was able to get — he contacted me and I said, yes, I would try to help him. This is a claimant who tried to commit suicide by jumping off a third-story window or something and taking to all of the New Medical Center and held there for 14 days because he was a danger to himself and so forth. Now, Dr. Parrick did — she is a consultant, and she stated that he would not be able to respond appropriately to the usual work settings in matters like attendance and adjusting to changes in work setting due to depression and poor concentration. And that is why, in the psychiatric review technique form, ALJ Wheeler did put down often, with often meaning one-third of the day, At the second hearing was when the vocational expert testified with the word often being there, there would be no jobs in step 5 that the claimant could do. And therefore, he disregarded — it would appear he disregarded Dr. Parrick's findings without providing specific and legitimate reasons based upon substantial evidence in the record. It was just an attempt to uphold his prior decision and find against the claimant. So what we have here is a claimant who has been diagnosed with major depression who would appear to meet listing 1204. And we do have an ALJ who conducted the hearing who was not an impartial adjudicator as required by the Administrative Procedure Act.  MS. NISBETT-CHOCKERY Counsel, you have about two-and-a-half minutes. Did you want to save some time for one more? MS. PARRICK No, I'd like to listen. Yes, I'd like to answer back. Thank you. By the way, may I say just one thing? I asked that the tape of the first hearing be admitted. The Ninth Circuit sent it back and said, give it to the panel and see if the panel will accept it, because the written evidence of the — what took place at the hearing does not provide the judge's voice and so forth at the hearing. I did write again to Ninth Circuit and asked the panel to accept and listen to the tape. And I did not receive an answer. I do have the tape here if the panel would like to have it. MS. NISBETT-CHOCKERY I think what we require is a written motion. If you've already filed that, it should be sent to us by the clerk's office. And if you have not filed a written motion with us, you'll have to do that and give opposing counsel an opportunity to say — MS. PARRICK I did write the motion, and they sent it back to me. MS. NISBETT-CHOCKERY I don't believe the file reflects that. But it may — we can — we can check into that, and perhaps opposing counsel can discuss that in his argument. MS. PARRICK All right. Thank you. MS. NISBETT-CHOCKERY Thank you. MR. ALMOND-ROTH Good morning, Your Honors. Almond-Roth for the Commissioner of Social Security. The ALJ's decision in this case is supported by substantial evidence and free of bias. With regard to the bias issue, the apparent in this case has not only waived the issue, but has had many opportunities to raise the issue, including when the district court remanded this case before the same ALJ. I would like to point out that the apparent has been represented before by three attorneys, and none of these have at any time raised the issue before the ALJ himself, asking him to recuse himself. The appeals counsel, the district court, or this Court, until now, of course. In any event, the record before this Court does not show that the ALJ's behavior can even close to actionable bias. First, the apparent has failed to revert the presumption that the ALJ is not biased. And the record shows, if you look at the initial ALJ decision, that he has significant legitimate questions based in particular on comments from a CE, a constructive examiner, regarding the credibility of this apparent. And that was before the ALJ, in this case, engaged into strong cross-examination of the apparent. Further, apparent has failed to argue specific prejudice and has not presented significant non-waived issues for this Court's consideration. Finally, apparent has failed to provide this Court with a written transcript of the hearing, and I'm a little puzzled by that. She now wants you to rely on extra record evidence, including listening to the tone of that ALJ and listening to the tape. We submit that the Court need not and should not look at this extra record evidence. The only basis of this is that the record is not before the district court. I'm referring, yes, I'm referring specifically to the tape of that hearing, and I'm referring to the tape of a hearing. Yes, but the tape of a hearing is the record of a hearing in a different form. So I'm puzzled by your use of the phrase, extra record, and that's what I'm focusing on. Was there any effort to place the tape before the district court in this case? I'm not aware that the issue was on trace before the district court, and the tape was not presented. And I understand that normally, even though the tape is part of the record, you would have before you what supports what apparent did in this case is selectively, you know, pinpoint strong words from the ALJ without the context. Of that hearing, and apparently then provide the transcript, which would normally what this Court would have. And that's what now they want you to listen to the tape. Which would presumably provide the context that you say is missing. I guess I'm not really sure I understand what your objection is. To the tape? Yes. I think the objection is normally the only advantage of the tape as opposed to the I have not listened to the tape. It wasn't provided to me. The only point in my mind to look at the tape is to listen to the tone of the judge to see if the judge was angry. But that doesn't try. There is case law that says that doesn't try such a level of bias. And I would be concerned that the Court starting with just selective quotes from the judge without having had the benefit of reading the transcript would then listen to the tape as opposed to have a written record to which you can go back and look at. And I believe also that if the Court wanted to supplement the right, that we supplement the excerpt in this case, it would be also fair to include all the documents that explain what the ARG had in mind when he went into that hearing. There is Dr. Second's, for instance, initial decision, which is part of the supplemental excerpts, I believe. Dr. Second examined this appellant, and he did not cooperate with his examination of his needs. He refused to do so. That's what I think if the excerpts have to be supplemented, it should be necessary to really get a full picture because bias is based on the old record and prejudice also. I'm moving away from the bias issue for a moment. Could you address the question about the conflict or whether there was a conflict between the testimony of the vocational expert and the DOT? Plaintiff claims or the appellant claims there was a conflict. And I don't believe the government rebutted that. So I wanted to get your views on that. I think the, let me just, the, in this case what happened is the vocational expert relied on a knowledge of the availability of the jobs in, I believe, Los Angeles and Long Beach area and not on the DOT itself. And I believe that because the way those jobs were classified in the DOT, even though normally it's proper to ask if there is a conflict, any error that might have existed. But it's required, right? The ALJ is required to develop on the record whether there's a conflict, that that's the procedure that's required? Normally the, yes, Your Honor, I'm sorry to interrupt. I'm sorry. Go ahead. Normally the ALJ is supposed to ask. But there is this case, I believe Johnson v. Shahla, which addressed the issue and says when there is persuasive evidence of available job categories in the local, rather than national market, then any error in that case, in such a case, would be non-reversible essentially. Does the regulation that is cited, the post-date, the Johnson case, 00-4P, I'm sorry, Your Honor, you don't get that. Well, the Johnson case was decided in 1995, as I recall. And so I guess my question to you is whether the regulation, the rule that requires the particular procedure to be followed to develop the, what Judge Coutte has been discussing with you, the development of the difference between the Dictionary of Occupational Titles and the jobs that are being discussed, is that regulation issued after the Johnson case? I'm not aware of that, Your Honor. I'd be happy to research it and get back to you on that point. Well, I imagine we can find that out ourselves. But I guess the question that I have in my mind is, if the regulation is later than our case, would that necessarily change the result of the case? Not necessarily so, because if the vocational expert, normally the vocational expert has a knowledge, specific knowledge, and that's why they use that expert. If the vocational expert uses a testimony on the local market and availability of the local market, based on the knowledge, the existence of an overall national statistics or classifications would not change what exists in the local market. So you're not disagreeing that there was a conflict between what the vocational expert said and the DOT. And so then Johnson says, the ALJ can rely on expert testimony, which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. What was the persuasive evidence that was presided by the vocational expert here? The evidence appears, I believe, on the supplementary excerpts. Let me have a look. At page 26, at which the vocational expert explained that there would be a number of janitorial and clinical occupations in the greater Los Angeles and Long Beach area. And she did not discuss the DOT. She did not refer to the DOT and say, you know, this is also based and conforms to the DOT. She said, this is based on the local economy. And she's an expert and, I assume, knowledgeable of that local economy in which she operates. But is the fair statement that this is available in Los Angeles enough to be persuasive evidence from the Johnson, as suggested by the Johnson v. Kalala case? I think in the Johnson case, the other part is that the ALJ had asked a hypothetical question that described exactly the limitations of the claimant. And the vocational expert had the opportunity to listen to those limitations and testify. And in this case, also, the ALJ described what were the limitations of the claimant. And in response to that, the vocational expert testified there would be jobs in the local economy. So the context is very similar in that sense. Now, it's true that the vocational expert did not say, I also looked at the DOT, and by the way, I'm not relying on the DOT. You don't have that part. It is true. That's what she didn't do, but she really was specific and replied to that specific question from the ALJ. Thank you, counsel. You have exceeded your time, but I think we understand your position. Thank you, Your Honors. Mr. Simpson, you have some rebuttal time remaining. This is really a simple case, one where the medical evidence does show that the impairment meets or equals 1204, listing 1204. In addition, we do have, and I would say that the adjudicator was not impartial as he should have been. And the claimant reapplied for benefits on April 1, 2001, and has been receiving SSI benefits. So what we're dealing with here is a period from March 8, 96 to April 1, 2001. And as I stated previously, the ALJ did not give specific and substantial reasons for changing his opinion from often deficiencies of concentration to mild to moderate. And it would appear that he just did it to uphold his prior decision of finding the claimant not disabled. Thank you. Thank you, counsel. The case just argued is submitted.
judges: T.G. Nelson, Graber, Ikuta